**GLANCY PRONGAY & MURRAY LLP**
Lee Albert (P.A. Bar ID 46852)
230 Park Ave., Suite 530
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Leanne H. Solish
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Lead Plaintiff Richard Worley*
*and the Proposed Settlement Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURTNEY ELKIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WALTER INVESTMENT MANAGEMENT CORP., GEORGE M. AWAD, ANTHONY N. RENZI, and GARY L. TILLETT,<br><br>Defendants. | Case No.: 2:17-cv-02025-JCJ<br><br>**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

BACKGROUND ...............................................................................................................3

ARGUMENT ....................................................................................................................5

I.       THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............5

         A.       The Standards for Preliminary Approval .................................................5

         B.       A Presumption of Fairness Applies to the Settlement ............................7

                  1.       There Are No Obvious Deficiencies to Cast Doubt on the Proposed
                           Settlement's Fairness and the Settlement Falls Within the Range of
                           Possible Approval ......................................................................7

                  2.       The Proposed Settlement is the Product of Good Faith, Extensive
                           Arm's Length Negotiations.........................................................10

                  3.       Plaintiff's Investigation & Defendants' Defenses Support Preliminary
                           Approval ...................................................................................11

                  4.       The Proponents of the Settlement Are Experienced In Similar
                           Litigation..................................................................................13

II.      THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ........................13

         A.       The Settlement Class Meets the Requirements of Rule 23(a) ..............14

                  1.       Numerosity................................................................................14

                  2.       Commonality.............................................................................15

                  3.       Typicality ..................................................................................16

                  4.       Adequacy ..................................................................................17

         B.       The Settlement Class Meets the Requirements of Rule 23(b)(3) .........18

                  1.       Common Questions of Law and Fact Predominate ..................18

                  2.       A Class Action Is Superior .......................................................19

3.    Proposed Class Counsel Satisfy Rule 23(g)................................................20

III.    NOTICE TO THE CLASS SHOULD BE APPROVED...................................................21

CONCLUSION..........................................................................................................................23

## TABLE OF AUTHORITIES

CASES

*Alves v. Main*,
    No. 01-789 (DMC), 2012 WL 6043272 (D.N.J. Dec. 4, 2012) .......................................... 10, 13

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................................... *passim*

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ...................................................................................................... 16

*Bernhard v. TD Bank*,
    No. 08-4392, 2009 WL 3233541 (D.N.J. Oct. 5, 2009) ......................................................... 10

*Curiale v. Lenox Group, Inc.*,
    Civ. A. 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ............................................... 6

*Darquea v. Jarden Corp.*,
    No. 06 Civ. 722 (CLB), 2008 WL 622811 (S.D.N.Y. Mar. 6, 2008) ...................................... 20

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) ..................................................................................................... 5

*Eisenberg v. Gagnon*,
    766 F.2d 770 (3d Cir. 1985) .................................................................................................... 20

*Evans v. Jeff D.*,
    475 U.S. 717 (1986) .................................................................................................................. 5

*Fain v. USA Techs., Inc.*,
    707 F. App'x 91 (3d Cir. 2017) ................................................................................................ 8

*Gates v. Rohm & Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2008) ............................................................................................... 6

*Gen. Tel. Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................................ 16

*Gerber v. Computer Assocs. Int'l, Inc.*,
    No. 91 CV 3610, 1995 WL 228388 (E.D.N.Y. Apr. 7, 1995) ................................................ 15

*Green v. Wolf*,
    406 F.2d 291 (2d Cir. 1968) .................................................................................................... 15

*In re Amer. Bus. Fin. Servs. Inc. Noteholders,*
  *Litig.*, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ................................................. 9

*In re Auto. Refinishing Paint Antitrust Litig.*,
  MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ................................. 6

*In re Beef Indus. Antitrust Litig.*,
  607 F.2d 167 (5th Cir. 1979) ................................................................................ 14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .................................................................................... 6

*In re Cigna Corp. Sec. Litig.*,
  No. 02-8088, 2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) .................................... 15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ............................................................................. 5, 6, 7

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) .............................................................................. 9

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................................. 19

*In re LG/Zenith Rear Projection TV Class Action Litig.*,
  No. 06-5609 (JLL), 2009 WL 455513 (D.N.J. Feb. 18, 2009) ......................... 15, 17

*In re Lucent Techs., Inc., Sec. Litig.*,
  307 F. Supp. 2d 633 (D.N.J. 2004) ............................................................. 7, 17, 20

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................... 19

*In re Monster Worldwide, Inc. Sec. Litig.*,
  251 F.R.D. 132 (S.D.N.Y. 2008) ........................................................................... 20

*In re Ocean Power Techs., Inc.*,
  No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) .............................. 9

*In re Processed Egg Prods. Antitrust Litig.*,
  284 F.R.D. 249 (E.D. Pa. 2012) ......................................................................... 6, 11

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
  962 F.Supp. 450 (D.N.J. 1997) .......................................................................... 7, 13

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................ 14

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ............................................................ 9

*In re Schering-Plough Corp.*,
  No. 08-397 (DMC)(JAD), 2012 WL 4482032 (D.N.J. Sept. 25, 2012) .................................. 18

*In re Twinlab Corp. Sec. Litig.*,
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) ............................................................ 17

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................ 17, 19

*In re Viropharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ....................................................... 9

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ............................................................... 16

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ................................................................. 5

*Johnston v. HBO Film Mgmt., Inc.*,
  265 F.3d 178 (3d Cir. 2001) ................................................................ 16

*Jones v. Commerce Bancorp, Inc.*,
  Civil No. 05-5600 (RBK), 2007 WL 2085357 (D.N.J. July 16, 2007), .................................. 22

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*,
  149 F.R.D. 65 (D.N.J. 1993) ................................................................ 15

*Mehling v. New York Life Ins. Co.*,
  246 F.R.D. 467 (E.D. Pa. 2007) ........................................................... 6, 10

*Nat'l Football League Players' Concussion Injury Litig.*,
  301 F.R.D. 191 (E.D. Pa. 2014) .............................................................. 6

*Neale v. Volvo Cars of N. Am., LLC*,
  No.10-cv-04407 (DMC)(JAD), 2011 WL 1362470 (D.N.J. Apr. 11, 2011) ............................ 19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ................................................................ 14

*Ross v. Abercrombie & Fitch Co.*,
   257 F.R.D. 435 (S.D. Ohio 2009) ........................................................................ 16

*Safran v. United Steelworkers of Am., AFL-CIO*,
   132 F.R.D. 397 (W.D. Pa. 1989) .......................................................................... 16

*Silvis v. Ambit Energy L.P.*,
   No. CV 14-5005, 2018 WL 1010812 (E.D. Pa. Feb. 22, 2018) ................................ 7

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ............................................................................................ 17

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ........................................................................... 15, 16

*Sullivan v. DB Investors, Inc.*,
   667 F.3d 273 (3d Cir. 2010) .............................................................................. 5, 6

*Szczubelek v. Cendant Mortg. Corp.*,
   215 F.R.D. 107 (D.N.J. 2003) ............................................................................. 15

*Thomas v. NCO Fin. Sys., Inc.*,
   Civ. A. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) ............................... 6, 7

*Todd v. STAAR Surgical Co.*,
   No. CV145263MWFGJSX, 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ............... 11

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ....................................................................................... 16

## STATUTES

11 U.S.C. § 101 ......................................................................................................... 3

15 U.S.C. § 78u-4(a)(7) ...................................................................................... 21, 22

28 U.S.C. § 1404(a) .................................................................................................. 4

## RULES

Fed. R. Civ. P. 23 ............................................................................................ *passim*

OTHER AUTHORITIES

Manual for Complex Litigation, §21.633 (4th ed. 2004)............................................................... 14

Manual for Complex Litigation, § 21.632 (4th ed. 2004)............................................................... 6

Court-appointed Lead Plaintiff, Richard Worley ("Lead Plaintiff"), respectfully submits this memorandum of law in support of his unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), which is attached to the Stipulation of Settlement as Exhibit A.[1]

## INTRODUCTION

The Parties have reached a proposed Settlement of this Action that would resolve all claims against Defendants in exchange for a cash payment of $2.95 million (the "Settlement Amount") for the benefit of the Settlement Class. Lead Plaintiff now requests that the Court preliminarily approve the Settlement. Entry of the Preliminary Approval Order will begin the process of considering the proposed Settlement by authorizing notice of the Settlement's terms and conditions to be sent to investors who are believed to be members of the Settlement Class. A final approval hearing (the "Settlement Fairness Hearing") will then be conducted so that the Parties and Settlement Class Members may present arguments and evidence for and against the terms, and the Court will then make a final determination as to whether the proposed Settlement is fair, reasonable and adequate. To facilitate this process, the proposed Preliminary Approval Order will, among other things:

(i)     preliminarily approve the terms of the Settlement set forth in the Stipulation;

(ii)    certify the Settlement Class, for settlement purposes only;

(iii)   approve the form and content of the Notice, Claim Form and Summary Notice attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order;

(iv)    find that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable under the circumstances, and comply with the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

---

[1] All capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 13, 2018 (the "Stipulation").

(v)     set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the Plan of Allocation and/or Lead Counsel's application for attorneys' fees and litigation expenses; submitting papers in support of final approval of the Settlement; and the Settlement Fairness Hearing.

As explained herein, the standards for preliminary approval are easily met in this case. First, the Settlement represents an outstanding result, especially when juxtaposed against the significant risk that the Settlement Class might recover less (or nothing), if the Action were litigated through a decision on Defendants' motion to dismiss, class certification, summary judgment, trial, and the inevitable appeals that would follow. This process would last many years and involve substantial additional expense, with no guarantee of a better result. In contrast, the Settlement will provide Settlement Class Members with a significant and immediate cash benefit.

Second, by the time the Settlement was reached, Lead Plaintiff and Lead Counsel had a thorough understanding of the claims asserted and the risks of continued litigation. The Settlement is the direct result of the considerable efforts undertaken by Lead Plaintiff and Lead Counsel in prosecuting and investigating this Action. Among other things, Lead Plaintiff, through Lead Counsel: (i) conducted a thorough investigation into the Settlement Class's claims, including a review of, among other things, filings with the U.S. Securities and Exchange Commission ("SEC"), wire and press releases published by and regarding Walter Investment Management Corporation, now known as Ditech Holding Corporation ("WIMC"), analyst reports and advisories about WIMC, WIMC's conference call transcripts and investor presentations, interviews with former WIMC employees, and consultation with accounting and damages experts; (ii) drafted a detailed 61-page Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") based on this investigation; (iii) opposed Defendants' motion to dismiss the Complaint; (iv) filed a limited objection to WIMC's voluntary bankruptcy petition under chapter 11 of title 11 of the United

States Code (11 U.S.C. § 101 *et seq.*) in the United States Bankruptcy Court for the Southern District of New York to pursue a Prepackaged Chapter 11 Plan of Reorganization (the "Prepackaged Plan") in order to make clear that Lead Plaintiff and the putative class were not subject to the Prepackaged Plan's release and that their claims were unaffected by the Prepackaged Plan; (v) drafted and exchanged extensive mediation statements; (vi) participated in a mediation (including briefing) with mediator Michelle Yoshida, Esq. of Phillips ADR, in which the Parties each advanced and defended their positions regarding liability and damages; and (vii) engaged in extensive negotiations regarding the terms of the proposed Settlement.  Accordingly, Lead Plaintiff and Lead Counsel were fully informed of the strengths and weaknesses of the case at the time of settlement.

Third, the Settlement is strongly supported by both Lead Plaintiff and Lead Counsel.  Lead Plaintiff, who lost a significant sum of money on his investment in WIMC common stock during the Class Period, closely monitored and participated in this litigation from the outset, including during the settlement negotiation process, and recommends that the Settlement be approved. Likewise, Lead Counsel, who have extensive experience prosecuting securities class actions, strongly believe that the Settlement is in the best interest of the Class.

Finally, the Settlement was reached only after protracted, arm's length negotiations with the help of a well-respected mediator.

For each of these reasons, and those set forth below, Lead Plaintiff respectfully requests the Court enter the Preliminary Approval Order.

## BACKGROUND

A putative class action complaint was filed on March 16, 2017, in the United States District Court for the Southern District of Florida, styled *Elkin v. Walter Investment Management Corp. et al*, Case No. 1:17-cv-20997-UU.  On May 2, 2017, the Action was transferred to the Eastern District of

Pennsylvania pursuant to 28 U.S.C. § 1404(a).  By Order dated June 12, 2017, Richard Worley was appointed lead plaintiff in this Action, and the Court approved Lead Plaintiff's selection of Glancy Prongay & Murray LLP as Lead Counsel for the putative class (ECF No. 17).

On September 15, 2017, Lead Plaintiff filed and served the Complaint, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act (ECF No. 33).  Among other things, the Complaint alleged that Defendants made materially false and misleading statements about stockholders' equity value in WIMC and WIMC's deferred tax asset balances.  The Complaint further alleged that the price of WIMC common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed.

On November 14, 2017, Defendants filed a motion to dismiss the Complaint (ECF No. 40). On December 29, 2017, Lead Plaintiff served his papers in opposition (ECF No. 43).

On November 30, 2017, WIMC commenced a voluntary bankruptcy proceeding, and from November 30, 2017 to February 9, 2018, the Action was automatically stayed as to WIMC until the bankruptcy case concluded (ECF Nos. 41, 45).   Lead Plaintiff, through Lead Counsel and bankruptcy counsel, filed a limited objection to WIMC's Prepackaged Plan on December 29, 2017 to make clear that Mr. Worley and the putative class in this Action were not subject to the Plan's releases and that their claims against the Individual Defendants were unaffected by the Prepackaged Plan.  At the conclusion of WIMC's bankruptcy, Lead Plaintiff and the putative class's claims in this Action were specifically carved out of WIMC's Prepackaged Plan as modified.

While the Action was automatically stayed as to WIMC, the Parties discussed the possibility of resolution of the Action following WIMC's emergence from bankruptcy and agreed to mediate

the Action before Michelle Yoshida, Esq. of Phillips ADR.  On February 15, 2018, Lead Counsel

and Defendants' Counsel participated in a full-day mediation session that was overseen byMs.

Yoshida.  In advance of that session, the Parties exchanged, and provided to Ms. Yoshida, detailed

mediation statements and exhibits, which addressed the issues of both liability and damages.  The

session resulted in an agreement in principle to settle the Action, and contemplated the Parties

negotiating a long-form settlement agreement as embodied in the Stipulation.  The Parties thereafter

engaged in further negotiations with respect to the terms of the Stipulation.

## ARGUMENT

## I.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.     The Standards for Preliminary Approval

The settlement of complex litigation is strongly favored and encouraged in the Third Circuit.

*See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Stipulation of Settlements are

to be encouraged because they promote the amicable resolution of disputes and lighten the

increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig*.,

391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action

litigation, and it should therefore be encouraged."); *In re Gen. Motors Corp. Pick-Up Truck Fuel*

*Tank Prods. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlements, particularly

in class actions and other complex cases where substantial judicial resources can be conserved by

avoiding formal litigation.").  These principles were forcefully reinforced by the Third Circuit in

*Sullivan v. DB Investors, Inc.*, 667 F.3d 273, 311 (3d Cir. 2010) (*en banc*).  There, the Third Circuit

sitting *en banc* recognized, especially in class actions, the "strong presumption in favor of voluntary

Stipulation of Settlements."  *Id.*

Rule 23(e) requires judicial approval for the compromise of class actions.  *See Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986);

*Sullivan*, 667 F.3d at 295; *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 259 (E.D. Pa. 2012). "Judicial review of a proposed class settlement generally requires two hearings: one preliminary approval hearing and one final 'fairness' hearing." *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008); *Curiale v. Lenox Group, Inc.*, Civ. A. 07-1432, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008). When reviewing a proposed settlement in the context of preliminary approval, the court's function is to make a preliminary evaluation of the fairness of the settlement prior to directing that notice be given to members of the settlement class. *Curiale*, 2008 WL 4899474, at *4 (quoting Manual for Complex Litigation, § 21.632 (4th ed. 2004).

Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of possible approval. *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007); *Curiale*, 2008 WL 4899474, at *4; *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004); *Thomas v. NCO Fin. Sys., Inc.*, Civ. A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002). In making this determination, a preliminary presumption of fairness applies where: "(1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[2] *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001); *Gen. Motors Corp.*, 55 F.3d at 785. Courts also consider whether there was significant investigation of plaintiff's claims, and whether the proposed settlement provides preferential treatment to certain class members. *Nat'l Football League Players' Concussion Injury Litig.*, 301

---

[2] Because notice to the Settlement Class has not yet been issued, this factor can only be assessed preliminarily. There are currently no known objectors to any aspect of the Settlement, and Lead Plaintiff, a sophisticated investor, wholly endorses the Settlement as fair, adequate and reasonable. Settlement Class Members will be given an opportunity to voice their opinions of the Settlement in connection with the Settlement Hearing, when the Court will make its final determination of the fairness, reasonableness and adequacy of the Settlement.

F.R.D. 191, 198 (E.D. Pa. 2014); *Silvis v. Ambit Energy L.P.*, No. CV 14-5005, 2018 WL 1010812, at *7 (E.D. Pa. Feb. 22, 2018).

If a preliminary evaluation of fairness is made, the second step is to conduct a formal fairness and final approval hearing after notice has been disseminated to the Settlement Class. *Gen. Motors Corp.*, 55 F.3d at 785 (distinguishing between the evaluations conducted during preliminary approval and final approval). At this time, Lead Plaintiff respectfully requests that the Court take the first step in the settlement process and grant preliminary approval of the Settlement so that notice can be given to the Settlement Class.

**B.    A Presumption of Fairness Applies to the Settlement**

**1.    There Are No Obvious Deficiencies to Cast Doubt on the Proposed Settlement's Fairness and the Settlement Falls Within the Range of Possible Approval**

The proposed Settlement is presumptively fair. It provides for a cash payment of $2,950,000 for the benefit of the Settlement Class. This is an excellent result stemming from hard-fought litigation, and plainly falls within the range of reasonableness when compared to the risks posed by trial and the continued litigation of the issues in dispute. *Thomas*, 2002 WL 1773035, at *5 (A proposed settlement is substantively fair, for preliminary approval purposes, if it falls within the "range of *possible* approval."). Indeed, in order to evaluate the merits of a settlement, the benefit must be compared to the risk that no recovery or a lesser recovery might be achieved after trial and likely appeals, and possibly years into the future. *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 644 (D.N.J. 2004) (noting that "[a] court must also 'survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement.'") (quoting *In re Prudential Ins. Co. Am. Sales*

*Practices Litig.*, 962 F.Supp. 450 (D.N.J. 1997) ("*Prudential I*"), *aff'd*, 148 F.3d 283, 319 (3d Cir. 1998) ("*Prudential II*").

Lead Counsel believes that Lead Plaintiff has a solid case – and negotiated the Settlement on this basis – but proving the claims against Defendants presented serious challenges.  To prove the case, Lead Plaintiff needed to establish, among other things, that WIMC had the requisite intent to defraud investors.  Defendants argued that they lacked any motive to commit fraud, and because WIMC was preparing to file bankruptcy and restructure, it was illogical for Defendants to intentionally misstate deferred tax assets on WIMC's balance sheet.  In addition, Defendants argued that while WIMC's accounting error was a violation of GAAP, a violation of GAAP alone is insufficient to establish scienter.  Relying on a recent Third Circuit decision, *Fain v. USA Techs., Inc.*, 707 F. App'x 91, 94 (3d Cir. 2017), Defendants further asserted that even if the size and nature of WIMC's accounting error was significant, that it did not give rise to a strong inference of scienter in the context of WIMC's overall business.  Thus, to prevail, Lead Plaintiff would have had to demonstrate to the Court and/or jury that, on a holistic basis, Defendants intentionally and/or recklessly misstated the deferred tax asset balance to mislead investors.  While Lead Plaintiff is confident that he could have defeated these arguments and demonstrate a strong inference of scienter, Defendants vigorously disputed Lead Plaintiff's claims.  As a result, Lead Plaintiff faced the very real risk that the Court or a jury would conclude that Defendants did not act with scienter.

This case was far from a "slam dunk" and, in light of the substantial future risks posed by continued litigation, it is an excellent result that provides Settlement Class Members with an immediate recovery of $2.95 million upon approval, which equates to approximately 19% of maximum estimated damages.  Lead Plaintiff's damages expert estimated aggregate § 10(b) damages

of approximately $15.8 million in this case,[3] assuming that Lead Plaintiff was able to establish the elements of falsity, materiality, loss causation, and scienter for each of his allegations.  Proving the damages reflected in this estimate assumes that Lead Plaintiff would have prevailed on all of his arguments and that all aspects of the case would be sustained and proven at trial.  Even assuming that the maximum aggregate damages of $15.8 million were able to be proven at trial, the $2.95 million Settlement Amount still represents approximately 19% of maximum estimated damages, which is well within the range of reasonableness. *See In re Ocean Power Techs., Inc.,* No. 3:14-CV-3799, 2016 WL 6778218, at *21 (D.N.J. Nov. 15, 2016) (approving an 11.5% recovery for the settlement class, concluding that the settlement is within the range of approval, and noting that "Courts in this Circuit have routinely approved settlements providing similar percentages of recovery – or even far less.") (citing *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *14 (E.D. Pa. Jan. 25, 2016) (approving settlement of 9% to 10% of maximum estimated loss, and noting that, between 1996 and 2014, median settlement amount was 4.8% of projected investor losses ranging between $50 million and $99 million*); In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 714-15 (E.D. Pa. 2001) (noting that securities class actions that settled between 1995 and 1999 recovered between 5.5% and 6.2% of estimated losses); *In re Amer. Bus. Fin. Servs. Inc. Noteholders Litig.*, 2008 WL 4974782, at *3, *9, *13 (E.D. Pa. Nov. 21, 2008) (approving settlement for 2.5% of damages); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approving settlement for 5.2% to 8.7% of claimed damages)); *see also* NERA 2017 REVIEW, at 37, Fig. 28 (the median ratio of settlement amounts between 1996 and 2017 to

---

[3] Lead Plaintiff's expert employed a two-trader model with an appropriate volume reduction – the preferred approach used to estimate aggregate damages in securities class actions – and taking into consideration the "lookback period" limitation on damages under the PSLRA.

investment losses was 19.2% for cases alleging investor losses of less than $20 million) ); *id.* at 38, Fig. 29 (the median ratio of settlements to investor losses in 2017 was 2.6%).[4]

Moreover, the proposed Settlement treats all Settlement Class Members fairly, as allocation of the Settlement Fund will be distributed according to the amount of WIMC common stock Settlement Class Members purchased, the timing of the purchases, and the prices at which Settlement Class Members purchased/acquired or sold their WIMC common stock and their damages based thereon. In addition, while the deadline for objections has not yet passed, Lead Counsel is unaware of any Settlement Class Member objections to the proposed Settlement. For these reasons, as well as the factors discussed below, the proposed Settlement falls well within the range of reason because there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied. *See Mehling*, 246 F.R.D. at 472.

### 2.    The Proposed Settlement is the Product of Good Faith, Extensive Arm's Length Negotiations

The negotiations that resulted in the proposed Settlement were fairly conducted by highly qualified counsel who endeavored to obtain the best possible result for their clients. When counsel for the Parties engage in diligent arm's length negotiations with the assistance of a mediator, a settlement is generally entitled to a presumption of fairness, meriting preliminary approval. *See Bernhard v. TD Bank*, No. 08-4392, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) (preliminarily approving settlement and noting that the proposed settlement, which was achieved with the assistance of a mediator, appears to be the result of serious negotiation between the parties); *see also Alves v. Main*, No. 01-789 (DMC), 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("The

---

[4] A true and correct copy of the NERA 2017 REVIEW is attached as Exhibit 1 to the Declaration of Lee Albert in Support of Preliminary Approval of Settlement, which is being submitted concurrently herewith.

participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties." (internal quotation omitted)).

Such is the case here.  The Settlement was achieved only after arm's-length negotiations – including mediation before an experienced and well-regarded mediator of complex securities cases. *See, e.g.*, *Todd v. STAAR Surgical Co.*, No. CV145263MWFGJSX, 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (approving the parties' settlement, as settlement was the outcome of an arms-length negotiation conducted with the help of experienced mediator Michelle Yoshida, Esq. of Phillips ADR, and noting that the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive).

### 3. Plaintiff's Investigation and Defendants' Defenses Support Preliminary Approval

Lead Counsel conducted a wide-ranging and extensive investigation with respect to the allegations in the Complaint, but did not conduct formal discovery.  *See Processed Egg*, 284 F.R.D. at 267 (applying presumption in part because "although no formal discovery was conducted . . . [class counsel] conducted informal discovery, including, *inter alia*, independently investigating the merits").  Lead Counsel's investigation included, among other things: (a) conducting extensive research of the claims asserted in the Action, including a detailed review of SEC filings, court filings, conference call transcripts, press releases, analyst reports, news reports and other public information, interviews with former WIMC employees, and consultation with accounting and damages experts; (b) researching and preparing a detailed 61-page Complaint based on this investigation; (c) opposing Defendants' motion to dismiss the Complaint; (d) filing a limited objection to WIMC's voluntary bankruptcy petition; and (e) engaging in a mediation process overseen by Ms. Yoshida, which involved written submissions concerning liability and damages, a

full-day formal mediation session, consultations with Lead Plaintiff's damages expert, and weeks of follow-up negotiations. This extensive investigation and Lead Counsel's litigation efforts demonstrate that Lead Counsel was adequately informed of the relative strengths and weaknesses of Lead Plaintiff's case while negotiating the Settlement.

Of course, the Settlement cannot be viewed in a vacuum, and it is important to recognize that a recovery – let alone one equaling approximately 19% of maximum estimated damages – was never guaranteed. Absent settlement, numerous and complex factual issues remained to be litigated and Defendants vigorously disputed, among other things, WIMC's intent to defraud investors based on the deferred tax asset balance (as noted at length above). Thus, Lead Plaintiff faced the significant risk that the Court would find that the Complaint did not plead a strong inference of scienter under the heightened pleading standard of the PSLRA and dismiss the case at a relatively early stage.

If Lead Plaintiff had overcome the motion to dismiss and the Action were to proceed into discovery, and eventually, to class certification, summary judgment and trial, Lead Plaintiff would have had to overcome the numerous defenses asserted by Defendants. Among other things, the Parties would likely litigate at the summary judgment phase whether there were material issues of fact with respect to: (i) Defendants' scienter; (ii) the falsity of Defendants' alleged misstatements and omissions; (iii) materiality; (iv) loss causation; and (v) a class-wide damages methodology.

In addition, even if Lead Plaintiff were to prevail on the motion to dismiss, at class certification, on summary judgment, and on liability and damages at trial, Defendants would inevitably appeal these decisions and the verdict. This process would take many years, and may have resulted in no recovery at all. The Settlement, however, allows the Settlement Class to recover now, without incurring any additional risks or costs.

### 4.    The Proponents of the Settlement are Experienced in Similar Litigation

Counsel for all Parties in this case are highly-experienced securities class action litigators. As such, they are well-versed in the issues involved in litigating a securities class action lawsuit and fully capable of determining the strengths and weaknesses of a particular case. *See Alves*, 2012 WL 6043272, at *22 ("[C]ourts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'"); *Prudential I*, 962 F. Supp. at 543 ("[T]he Court credits the judgment of Plaintiffs' Counsel, all of whom are active, respected, and accomplished in this type of litigation.").

Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. *See* ECF No. 5-7 (Glancy Prongay & Murray LLP firm resume). Indeed, Lead Counsel has been an integral part of many settlements of this nature and in its estimation this Settlement is an excellent result because it provides the Settlement Class with a significant portion of maximum provable damages, under difficult legal and practical circumstances. It is Lead Counsel's informed opinion that given the risks and uncertainties inherent in complex securities class action litigation, the proposed Settlement is fair, reasonable and adequate and in the best interest of the Settlement Class.

Counsel for Defendants similarly have extensive expertise from a long track record in securities class actions and have vigorously defended their clients throughout the course of the Action. Given that the Parties are represented by well-respected counsel experienced in securities class action litigation who have vigorously litigated the Action, this factor supports preliminary approval of the proposed Settlement.

## II.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

One of this Court's functions in reviewing a proposed settlement of a class action is to

determine whether the action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See Amchem Prods.*, 521 U.S. at 592-93. Rule 23(a) sets forth four prerequisites to class certification applicable to all class actions, including classes for purposes of settlement: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. *See Fed. R. Civ. P.* 23(a); *see also Amchem Prods.*, 521 U.S. at 613. The proposed class must also meet one of the three requirements of Rule 23(b). *See Fed. R. Civ. P.* 23(b); *see also* Manual for Complex Litigation, §21.633 (4th ed. 2004).

The proposed "Settlement Class" is defined in the Stipulation as:

[A]ll persons and entities who or which purchased WIMC common stock between August 9, 2016 through August 1, 2017, inclusive (the "Settlement Class Period") and who were damaged thereby. Excluded from the Class are Defendants, officers and directors of WIMC during the Settlement Class Period, members of their Immediate Families and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest during the Settlement Class Period.

In certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620.[5] Here, as demonstrated below, certification is appropriate because the proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

A.    **The Settlement Class Meets the Requirements of Rule 23(a)**

1.    **Numerosity**

First, Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be "impracticable." *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182

---

[5] Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). "[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *Id*. (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979)).

(3d Cir. 2001).  Impracticability does not mean impossibility.  *See In re LG/Zenith Rear Projection TV Class Action Litig.*, No. 06-5609 (JLL), 2009 WL 455513, at *4 (D.N.J. Feb. 18, 2009).  Rather, it means that joinder would be "extremely difficult or inconvenient." *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 116 (D.N.J. 2003) (citing *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 73 (D.N.J. 1993)).  While there is no threshold number necessary to satisfy the numerosity requirement, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Courts have also "recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security." *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006).

Here, WIMC's stock was actively traded on the New York Stock Exchange (Ticker: "WAC"), and approximately 141,358,491 shares of WIMC's stock were traded during the class period.  *See Gerber v. Computer Assocs. Int'l, Inc.*, No. 91 CV 3610, 1995 WL 228388, at *2 (E.D.N.Y. Apr. 7, 1995) ("[Defendant's] common stock was listed and actively traded on the New York Stock Exchange [NYSE]; therefore, it is likely that [defendant's] stockholders are not concentrated in any one geographic location, but rather, are widely dispersed.  Hence, given that there will be a variety of residences and numerous claims, joinder would be impractical.") (citing *Green v. Wolf*, 406 F.2d 291, 298 (2d Cir. 1968)).  Thus, while the precise number of Settlement Class Members cannot be identified, it is likely to be in the thousands.  Accordingly, the Settlement Class is sufficiently numerous that Rule 23(a)(1) is satisfied.

### 2.     Commonality

Second, Rule 23(a)(2) requires the identification of a common contention, one "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *see also Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 226-27 (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). Moreover, courts look to the "common nucleus of operative facts" to determine predominance of common questions. *Safran v. United Steelworkers of Am., AFL-CIO*, 132 F.R.D. 397, 401 (W.D. Pa. 1989)).

Here, questions which are common to the proposed Settlement Class include, among others, whether the federal securities laws were violated by Defendants' acts as alleged in the Complaint, whether Defendants' public statements contained material misrepresentations and/or omissions, whether Defendants acted with scienter, whether the members of the Settlement Class have sustained damages, and, if so, the proper measure of those damages. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007); *see also Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 443 (S.D. Ohio 2009) ("Questions of misrepresentation, materiality, and scienter are the 'paradigmatic common question[s] of law in a securities fraud class action'").

### 3.   Typicality

Third, Rule 23(a) requires that claims of the class representative be typical of the claims of other Settlement Class Members. *See* Fed. R. Civ. P. 23(a)(3); *see also Amchem Prods.*, 521 U.S. at 625 (common issues test readily met in securities fraud cases). As with commonality, the test for typicality is not demanding.[6] "Where class members all allegedly suffered from the same course of

---

[6] The Supreme Court has recognized that the commonality and typicality analyses "tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

conduct, and the legal theories for all members are similar, typicality will generally be satisfied." *In re LG/Zenith*, 2009 WL 455513, at *4. Moreover, the requirement is satisfied as long as the lead plaintiff, the other representatives, and the settlement class "point to the same broad course of alleged fraudulent conduct to support a claim for relief." *Lucent*, 307 F. Supp. 2d 633 .

Here, the alleged injuries to Lead Plaintiff and the other members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories. Lead Plaintiff alleges that he, like the rest of the Settlement Class, paid artificially-inflated prices for WIMC common stock during the Settlement Class Period as a result of Defendants' materially misleading public statements and omissions in violation of the federal securities laws. As such, the Lead Plaintiff "ha[s] the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006). The typicality requirement is, therefore, satisfied. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

### 4.    Adequacy

Fourth, Rule 23(a)(4) requires that the class representative "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is measured by two standards. First, the representative(s) must not have interests that are antagonistic to the interest of other members of the class. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Lucent*, 307 F. Supp. 2d at 641. Second, class counsel must be qualified, experienced and able to conduct the litigation. *Id.* Both requirements are satisfied here for the Settlement Class.

Here, as described above, Lead Plaintiff – the proposed Settlement Class Representative –

has claims which are typical of and coextensive with those of the Settlement Class. Lead Plaintiff, like all Settlement Class Members, purchased WIMC common stock at artificially inflated prices during the Settlement Class Period as a result of the alleged materially false and misleading statements, and was allegedly damaged thereby. *See In re Schering-Plough Corp.*, No. 08-397 (DMC)(JAD), 2012 WL 4482032, at *6 (D.N.J. Sept. 25, 2012) ("Further, when Lead Plaintiffs have a strong interest in establishing liability under federal securities law, and seek similar damages for similar injuries, the adequacy requirement can be met.") (citations omitted). In addition, Lead Counsel has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States, and is qualified and able to conduct this litigation, as the Court recognized when appointing it lead counsel for the Settlement Class.[7] Thus, Lead Plaintiff is an adequate representative of the Settlement Class, and his counsel is qualified, experienced and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).

### B.    The Settlement Class Meets the Requirements of Rule 23(b)(3)

Certification under Rule 23(b)(3) requires a showing that "questions of law or fact predominate over any questions affecting only individual members," and the class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3) – two requirements referred to as "predominance" and "superiority." *Amchem Prods.*, 521 U.S. at 615. However, the manageability concerns of Rule 23(b)(3) are not at issue in settlement classes. *Id.* at 593. Certification of the Settlement Class will serve these purposes.

### 1.    Common Questions of Law and Fact Predominate

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Schering-Plough Corp.*, 2012 WL 4482032, at

---

[7] Lead Counsel has and will continue to fairly and adequately represent the interests of the Settlement Class. Accordingly, Lead Counsel should be appointed as class counsel for the Settlement Class under Rule 23(g).

*7 (citation omitted).  Further, "[i]t requires more than a common claim . . . rather, issues common to the class must predominate over individual issues."  *Neale v. Volvo Cars of N. Am., LLC*, No.10-cv-04407 (DMC)(JAD), 2011 WL 1362470, at *2 (D.N.J. Apr. 11, 2011) (citations omitted).  Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages.  *See In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 92 (S.D.N.Y. 2007).  As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *Amchem Prods.*, 521 U.S. at 625.

Here, "the critical issues for establishing Defendants' liability include whether the Defendants: (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.  Each of these issues is susceptible of generalized proof and, accordingly, the predominance requirement of Rule 23(b)(3) is satisfied."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *11 (S.D.N.Y. Dec. 23, 2009); *see also Veeco*, 235 F.R.D. at 240 ("[Q]uestions of fact regarding the content and implications of defendants' statements and defendants' intent in making these statements are central to the claims of each member of the putative class. Any individual issues will necessarily be secondary.").

### 2.      A Class Action Is Superior

The Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication.  *Prudential II*, 148 F.3d at 316; *see also* Fed. R. Civ. P. 23(b)(3) (listing four considerations relevant to this determination).  Here, any interests of Settlement Class Members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism for fairly and efficiently adjudicating the

claims of the large number of purchasers of WIMC common stock. Indeed, courts have concluded that the class action device in securities cases is usually the superior method by which to redress injuries to a large number of individual plaintiffs. *See Lucent*, 307 F. Supp. 2d at 641 ("Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'" (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985))); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible'") (quoting *Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 WL 622811, at *5 (S.D.N.Y. Mar. 6, 2008)) (alterations in original).

The scope and complexity of Lead Plaintiff's claims, together with the high cost of individualized litigation, make it unlikely that the vast majority of the Settlement Class Members would be able to obtain relief without class certification. Moreover, it is clearly desirable to concentrate the claims of all Settlement Class Members in this forum, where WIMC is located, and Lead Plaintiff does not foresee any difficulties in the management of this Action as a class action. Accordingly, the requirements of Rule 23(b)(3) are satisfied.

In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied. Thus, there are no issues that would prevent the Court from certifying this Settlement Class for settlement purposes and appointing Lead Plaintiff as Class Representative.

### 3. Proposed Class Counsel Satisfy Rule 23(g)

Rule 23(g) governs appointment of class counsel. Not only has Lead Counsel vigorously prosecuted this case, Lead Counsel also devoted significant time and effort in achieving this highly

favorable Settlement for the Settlement Class.  Lead Counsel has significant experience in securities litigation and class actions, including settlements thereof, which makes this Glancy Prongay & Murray particularly well-suited to serve as class counsel for the Settlement Class.

## III.    NOTICE TO THE CLASS SHOULD BE APPROVED

As outlined in the proposed Preliminary Approval Order, Lead Plaintiff will notify Settlement Class Members of the Settlement by mailing the Notice Packet to all Settlement Class Members who can be identified with reasonable effort.  The proposed Notice has been carefully drafted to contain all necessary information.  All of the information is provided in plain language and in a format that is easily accessible to the reader.  The Notice clearly advises recipients of their legal rights and obligations, including that they can object to any portion of the Settlement, exclude themselves from the Settlement, or submit the Claim Form to share in their *pro rata* portion of the Settlement.

The Notice satisfies the PSLRA's separate disclosure requirements by, *inter alia*, stating the amount of the Settlement on both an aggregate and average per share basis; providing a brief statement explaining the reasons why the Parties are proposing the Settlement; stating the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Settlement Class Members.  *See* 15 U.S.C. § 78u-4(a)(7).  The proposed Preliminary Approval Order further requires the Claims Administrator to cause the Summary Notice to be published once in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*. The Claims Administrator will cause copies of the Notice and the Claim Form to be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7).  Together the Notice and Summary Notice "provide all the required information concerning the class members' rights and obligations under the settlement."  *Prudential II*, 148 F.3d at 328.  The manner of providing notice, which includes the dissemination of the Notice by mail to all Settlement Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  *See Jones v. Commerce Bancorp, Inc.*, Civil No. 05-5600 (RBK), 2007 WL 2085357, at *5 (D.N.J. July 16, 2007) ("[T]he proposed distribution of notice to class members by first class mail is reasonable because no alternative method of distribution is more likely to notify class members[.]").

In connection with preliminary approval of the Settlement, the Parties are requesting that the Court establish dates by which notice of the Settlement will be distributed to Settlement Class members, dates by which Settlement Class Members may comment on the Settlement, and a date on which the Court will hold the Settlement Fairness Hearing.  The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| **Event** | **Proposed Due Date** |
| --- | --- |
| Deadline for mailing the Notice Packet to Settlement Class Members, and creation of Settlement website from which Notice and Claim Form can be downloaded ("Notice Date") | Up to 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice | Up to 30 business days after the Notice Date |
| Deadline for filing of papers in support of approval of Settlement, Plan of Allocation, and Lead Counsel's motion an award of attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for requesting exclusion | 21 calendar days prior to |

| **Event** | **Proposed Due Date** |
|---|---|
|  | Settlement Hearing |
| Deadline for submitting objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 5 calendar days prior to the Settlement Hearing |
| Settlement Hearing | 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting claim forms | Postmarked 140 calendar days from Notice Date |

## **CONCLUSION**

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Settlement and enter the accompanying proposed Preliminary Approval Order.

Dated:  July 13, 2018                                    Respectfully submitted,

                                                        **GLANCY PRONGAY & MURRAY LLP**

                                                        By: */s/ Lee Albert*
                                                        Lee Albert (P.A. Bar ID 46852)
                                                        230 Park Ave., Suite 530
                                                        New York, NY 10169
                                                        Telephone: (212) 682-5340
                                                        Facsimile: (212) 884-0988

                                                        **GLANCY PRONGAY & MURRAY LLP**
                                                        Lionel Z. Glancy
                                                        Robert V. Prongay
                                                        Leanne H. Solish
                                                        1925 Century Park East, Suite 2100
                                                        Los Angeles, California 90067
                                                        Telephone:  (310) 201-9150
                                                        Facsimile:   (310) 201-9160

                                                        *Lead Counsel for Lead Plaintiff and the Proposed Settlement Class*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On July 13, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of Pennsylvania, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 13, 2018.


*s/ Lee Albert*
Lee Albert

# Mailing Information for a Case 2:17-cv-02025-JCJ ELKIN v. WALTER INVESTMENT MANAGEMENT CORP. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **LEE ALBERT**
  lalbert@glancylaw.com,info@glancylaw.com,JLeinbach@glancylaw.com,JCohen@glancylaw.com

- **JOSEPH S. ALLERHAND**
  joseph.allerhand@weil.com

- **JONATHAN L. COCHRAN**
  jlc@hangley.com,bab@hangley.com,ecffilings@hangley.com

- **MATTHEW S. CONNORS**
  matthew.connors@weil.com

- **JACOB A. GOLDBERG**
  jgoldberg@rosenlegal.com,etexidor@rosenlegal.com

- **WILLIAM T. HANGLEY**
  whangley@hangley.com,gml@hangley.com,ecffilings@hangley.com

- **JONI S. JACOBSEN**
  joni.jacobsen@dechert.com,nicole.ladue@dechert.com

- **DAVID H. KISTENBROKER**
  david.kistenbroker@dechert.com,nicole.ladue@dechert.com

- **ELLEN MOSSMAN**
  ellen.mossman@dechert.com

- **ROBERT V. PRONGAY**
  rprongay@glancylaw.com,lsolish@glancylaw.com,JLeinbach@glancylaw.com,JCohen@glancylaw.com

- **STEPHEN A. RADIN**
  stephen.radin@weil.com,mco.ecf@weil.com,Andrew.Blumberg@weil.com,nymao@ecf.pacerpro.com

- **LAURENCE MATTHEW ROSEN**
  LRosen@Rosenlegal.com

- **LEANNE H. SOLISH**
  lsolish@glancylaw.com

- **STUART T. STEINBERG**
  stuart.steinberg@dechert.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)